The Hanson & Van Winkle Company v. Commissioner.
Hanson & Van Winkle Co. v. Commissioner
Docket No. 594.
United States Tax Court
1944 Tax Ct. Memo LEXIS 335; 3 T.C.M. (CCH) 221; T.C.M. (RIA) 44080; March 10, 1944
*335 William H. Osborne, Jr., Esq., 744 Broad St., Newark, N.J., for the petitioner. Francis X. Gallagher, Esq., for the respondent. STERNHAGEN Findings of Fact and Memorandum Opinion The following deficiencies and penalty were determined by the Commissioner: 1939
1940
Income tax
$108.11
$ 232.67
Excess profits tax
147.31
Personal holding tax
7,136.41
Delinquency penalty
1,784.11
The taxpayer assails the deficiencies for 1940 on the ground that they are based upon an erroneous determination (1) that its income includes a forgiveness of indebtedness of $6,085.75; (2) that disallows $2,700 in the amount used by the taxpayer to retire indebtedness incurred before January 1, 1934, as a factor of its undistributed subchapter A net income; (3) that disallows $900 as a similar factor (the error of this is conceded); (4) and it assails the delinquency penalty on the ground that the failure to file the return on time was due to reasonable cause and not due to wilful neglect; (5) No contest is made as to the deficiencies for 1939, but an attempt is made to lay foundation for a refund of the personal holding company tax delinquency penalty already paid for that year. Findings *336 of Fact The taxpayer, a New Jersey corporation, filed its income tax return for 1940 in the Fifth District of New Jersey. During 1940, it was a personal holding company within the meaning of Section 501, Internal Revenue Code. 1 and 2. In 1927, the taxpayer sold its manufacturing business to Hanson-Van Winkle-Munning Company for which it received cash and shares of the Munning Company. It retained certain accounts receivable and real estate which it has not been able to dispose of. From 1934 to 1938, it operated at a loss. On November 9, 1933, at the time of the death of W. R. King, an employee and shareholder, the taxpayer was indebted to him for $11,100 salary. On March 11, 1935, this indebtedness was $10,885.75. The executrix of the will of W. R. King threatened suit on the ground that the taxpayer had improperly conveyed certain assets to the Munning Company for shares. As the taxpayer was without funds to pay the indebtedness, Munning Company agreed to advance the cash required for a settlement. The claimant on March 11, 1935, received $7,500 from the Munning Company in consideration of the assignment of the salary claim and the assignment in blank of 27 shares of the taxpayer *337 standing in the name of decedent. The Munning Company held the 27 shares as security for the repayment to it of the $7,500. The shares were transferred on petitioner's stock books on May 10, 1935, to an officer of both companies, again on February 1, 1938, to the secretary of both companies, and on November 1, 1940, to the taxpayer after it had paid the indebtedness to Munning Company as follows: 1936
$ 580.00
1937
1,771.57
1938
224.26
1939
200.17
1940
4,724.00
$7,500.00
On the taxpayer's books, surplus was increased by $6,085.75. The taxpayer's undistributed subchapter A net income, shown in the 1940 personal holding company tax return, showed a deduction for an amount used to pay or retire indebtedness incurred prior to January 1, 1934, of $16,571, which included the last payment of $4,724 to the Munning Company. The Commissioner disallowed $2,700 of this amount on the ground that it represented the purchase price of its 27 shares. The Commissioner also included $6,085.75 in net income on the ground that the amount was a forgiveness of the unpaid balance of the King claim. 3. In 1940, the taxpayer paid to Ronelsin Factory Properties, Inc. $900 on account of indebtedness *338 incurred prior to January 1, 1934. 4. Early in 1941, petitioner was orally advised by a revenue agent auditing its 1939 income tax return, and again by letter of March 10, that it was a personal holding company. It discussed the matter with its accountant, who was cognizant of all the facts, and was advised that, inasmuch as it was a liquidating company, a personal holding company return need not be filed. Upon his advise no return was filed. Later, on October 27, 1941, upon advice of its counsel, petitioner filed its personal holding company tax returns for 1939 and 1940. 5. In the petition no errors are assigned to the determination of income and excess profits tax deficiencies for 1939, but error is assigned as to the failure to grant petitioner's application for refund of personal holding company tax and penalty paid for 1939. Memorandum Opinion STERNHAGEN, Judge: 1. The question is whether in fact there was in 1940 a forgiveness to this taxpayer of a debt of $6,085.75. This amount was the mathematical difference between the 1935 debt of $10,885.75 and $4,800 of the $7,500 which the taxpayer paid the Munning Company to repay the latter's advance in settlement of the King claim. *339 Even though there is ambiguity in that the consideration for the advance by the Munning Company was expressed as an assignment to Munning of the King claim and not a release of the King claim, nevertheless the 1936 correspondence states clearly enought the understanding that Munning was to be repaid by the taxpayer the $7,500 principal and 6 per cent interest and was to transfer to the taxpayer the 27 shares held as security. If these circumstances are to be read as a forgiveness to the taxpayer of part of its debt of $10,885.75, such forgiveness occurred in 1936 when, in the exchange of correspondence between the two corporations, the debt was recognized as limited to the principal of $7,500 and interest at 6 per cent. This understanding was finally carried out in 1940. We are unable to sustain the Commissioner's determination that income was realized in 1940 in a forgiveness of petitioner's debt. In that year the final payment was made on taxpayer's $7,500 debt to Munning, and the taxpayer received back the collateral security consisting of 27 of its own shares. The determination on this point is reversed. 2. The Commissioner treats the receipt by the taxpayer of *340 the 27 of its own shares as in a transaction of purchase of the shares for part, $2,700, of the last payment of $4,724 made to the Munning Company in 1940. As such a purchase, it is said that the amount of $2,700 must be excluded from the total amount of reduction of indebtedness incurred prior to January 1, 1934, in the computation of "subchapter A net income." Since the payment in 1940 of $4,724 was the last payment on the $7,500 debt to Munning, the evidence does not support the conception that $2,700 of it was purchase price for the 27 shares. These 27 shares were taxpayer's own shares, and they were accounted for on the taxpayer's books by a reduction in capital stock. They were not bought in the market, were not held as treasury stock, and were not held for sale. Whatever else may be said as to the acquisition of these 27 shares, they were not acquired for $2,700 of the amount paid to the Munning Company in 1940. They had been held by the Munning Company from March, 1935, as security for the payment of the taxpayer's debt of $7,500, and when the taxpayer received them in 1940, it was because the debt was paid and the security released. In this view, the taxpayer correctly treated *341 the entire amount of $4,724 paid by it to the Munning Company in 1940 as used to retire indebtedness incurred before January 1, 1934, within Section 504 (b), Internal Revenue Code. The determination on this point is reversed. 3. An item of $900 paid in 1940 to Ronelsin Factory Properties, Inc., is conceded by the Commissioner to be a proper credit in computing personal holding company income. 4. In explanation of the determination of a 1940 penalty of $1,784.11, the Commissioner in the notice of deficiency said: Inasmuch as the personal holding company surtax return for the taxable year 1940 was not filed within the time prescribed by statute, the 25% delinquency penalty has been asserted. The taxpayer assails this determination on the ground that the failure to file the return was due to reasonable cause and not due to wilful neglect, Section 291, Internal Revenue Code. There is no controversy over the fact that the taxpayer was a personal holding company as defined by Section 501, Internal Revenue Code. It was therefore under the duty of filing a personal holding company tax return on Form 1120-H. This it failed to do until October 27, 1941. The question is whether the evidence *342 shows that the failure was due to reasonable cause and not due to wilful neglect. We think the evidence does not go so far. The taxpayer knew about the requirements of the statute, and was informed by a revenue agent both orally and by letter before the time for filing had expired, that it appeared to be a personal holding company. This was enough to put the taxpayer on its guard against delinquency. However, it chose to ask and follow the advice of its accountant, who was preparing its income tax returns and who knew the facts, to the effect that since it was "a liquidating company" (cf. O'Sullivan Rubber Co. v. Commissioner, 120 Fed. (2d) 845, no personal holding company return was required to be filed. None was filed until later. We think this failure is shown to be due not to reasonable cause but to wilful neglect. The penalty was properly imposed. Commissioner v. Lane Wells Co., 321 U.S. 219. 5. Even though the taxpayer were shown by the evidence to be entitled to a refund of the personal holding company tax delinquency penalty which it paid for 1939, the Court is without jurisdiction to adjudicate its right, since *343 no deficiency in personal holding company tax for that year was determined, and an isolated claim for refund of tax or penalty is not justiciable before this Court. Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418; Everett Knitting Works, 1 B.T.A. 5. The determination of deficiency for 1939 is not before the Court and as to that year the petition is dismissed. As to the determination for 1940. Decision will be entered under Rule 50.